**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:23-CR-372 (TNM)** |
| **RYAN KEITH YATES,** | |
| **Defendant.** | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Ryan Keith Yates to 11 months' incarceration, 36 months' supervised release, 100 hours' community service, $2,000 in restitution, and the mandatory $100 special assessment. The guidelines range for Yates's conduct is eight to 14 months; the government's recommendation is in the middle of this range.

## I.     INTRODUCTION

The defendant, Ryan Keith Yates, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and

1

Yates trespassed by entering the restricted perimeter, which U.S. Capitol Police had established around the Capitol grounds, and entered the building through the Senate Wing Door. From there, he began an extensive scouting mission through the Capitol, traveling to—among other places—the Statuary Hall Connector, the Rotunda, the Crypt, and the hallway outside the House Floor. Outside of the House Floor, Yates stood by as his fellow rioters shoved to get inside, observing and typing on his phone. Later, he joined a mob of people near the Rotunda Doors who were trying to reenter the Rotunda itself. Yates pumped his fist and joined the crowd that was shoving against police and trying to enter the area directly under the Capitol's dome. Yates's pushing helped his fellow rioters reenter the Rotunda, threatened officers' safety, and slowed the effort to clear the building. In total, Yates spent over an hour in the Capitol.

The government recommends that the Court sentence Yates to 11 months' incarceration, 36 months' supervised release, 100 hours' community service, $2,000 in restitution, and the mandatory $100 special assessment. This sentence reflects the gravity of Yates's conduct, but also acknowledges his admission of guilt.

## II.    FACTUAL BACKGROUND

### A.    The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF No. 23, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3,

---

is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

2020 presidential election.

**B.      Yates's Role in the January 6, 2021 Attack on the Capitol**

On January 6, 2021, Yates trespassed by entering the restricted perimeter, then made his way to the building's northwest steps, near the scaffolding that was set up for the presidential inauguration. While there, he pushed away a barricade meant to block rioters from advancing, and carried it down the steps.



*Image 1: Yates moves barricades*

At 2:17 PM, Yates entered the Capitol through the Senate Wing Door, about five minutes after it was first breached. His phone's flashlight was on, and he held the device to record the

scene.



*Image 2: Yates enters the Capitol*

After entering the Capitol building, Yates traveled down the Statuary Hall Connector and to the House side of the building. There, rioters were trying to break into the House floor. Yates stood just feet away, observing the chaos and typing on his phone.



*Image 3: Yates travels down the Statuary Hall Connector*



*Image 4: Yates stands outside the House Chamber*

Yates also walked through the Capitol Rotunda, and down to the Crypt one floor below.

Third-party video showed Yates just feet away from a line of police that was trying to hold back

the mob. Rioters chanted and yelled at the officers, and just minutes after Yates was seen, the

crowd violently overran the line of police.



*Image 5: Yates in the Capitol Rotunda*



*Image 6: Yates in the Crypt*

Finally, around 3:20 p.m., Yates went to the interior Rotunda doors, which connects the Rotunda to the east entrance of the Capitol. There, police were persistently trying to get rioters out of the building through the nearby exterior doors. But as the police opened the doors to push rioters out, other rioters pushed to get in. The police were outnumbered, and the outside rioters managed to shove their way into the building.

At that moment, Yates was standing in the foyer between the exterior doors and the interior Rotunda doors. Seeing what was happening, Yates grew excited began to pump his fist just feet away from an officer. As the rioters from the outside surged to the interior Rotunda doors, Yates joined in. Continuing to pump his fist, Yates made his way nearly to the front of the crowd, feet away from a line of officers trying to stop the rioters from advancing into the Rotunda itself. A violent push and pull ensued for several minutes, and eventually, Yates—along with other rioters—managed to burst their way into the Rotunda. Police shortly thereafter closed the doors behind the rioters, and inside the Rotunda, Yates found himself surrounded by police. Outnumbered, he and other rioters were, within minutes, escorted out of the building with their hands raised.



*Image 7: Yates near the Rotunda door (front view)*



*Image 8: Yates near the Rotunda door (side view)*



*Image 9: Yates in the fight to enter the Rotunda*



*Image 10: Yates being escorted out the Rotunda*

In total, Yates spent over an hour in the building.

### III.    THE CHARGES AND PLEA AGREEMENT

On October 25, 2023, a federal grand jury returned an indictment charging Yates with five counts, including Civil Disorder in violation of 18 U.S.C. § 231(a)(3). On, February 8, 2024, Yates was convicted of that offense based on a guilty plea entered pursuant to a plea agreement.

### IV.    STATUTORY PENALTIES

Yates now faces sentencing on Count One of the Indictment, Civil Disorder in violation of 18 U.S.C. § 231(a)(3). As noted in the Presentence Report issued by the U.S. Probation Office, ECF No. 25 ("PSR"), Yates faces up to five years imprisonment, a fine of $250,000, and a supervised release term of up to three years. PSR at ¶ 4. Yates also agreed to pay a special assessment of $100 and $2,000 in restitution. *Id.* at ¶¶ 4, 11.

### V.    THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

The government, defense, and the Probation Office agree on the guidelines calculations in this case. All agree that the adjusted offense level for Count One is 13, as Yates violently pushed against officers outside the Rotunda at approximately 3:20 PM. All agree as well that the two-level decrease for acceptance of responsibility applies, making the total offense level 11. PSR at ¶¶ 28-32, 36-37; Plea Agreement, ECF No. 22 at 3 ("Plea Agreement"). All also agree that Yates has one applicable conviction as an adult—battery—to which he pled "nolo contendere," giving him one criminal history point and making him ineligible for the two-level reduction under U.S.S.G.

§ 4C1.1. PSR ¶¶ 40-41; Plea Agreement at 3. Accordingly, Yates is in Criminal History Category I. *Id.*

With a total offense level of 11 and a criminal history category of I, the guideline imprisonment range is eight to 14 months. PSR at ¶ 91; Plea Agreement at 4.

## VI.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of the recommended term of incarceration.

### A.   Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Yates's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Yates broke into the Capitol and spent an hour inside the building. He also joined a mob that violently pushed against officers. These officers were trying desperately to keep rioters from reentering the Rotunda. Pumping his fist and making his way nearly to the front of the crowd, Yates was an eager participant in the mob's violence. The nature and circumstances of Yates' offense were of the utmost seriousness, and fully support the government's recommended sentence of 11 months' incarceration, 36 months' supervised release, 100 hours' community service, $2,000 in restitution, and a $100 special assessment.

### B.  The History and Characteristics of the Defendant

Yates leads an itinerant life, and according to his father, is unemployed and struggling financially. PSR at ¶ 66. (Yates himself claimed to be employed as a commercial fisherman, but could not recall the name of the boat that employed him. *Id.* at ¶ 80). For a period, he lived at a

11

house where the landlord required him to enter and exit through a window, because the owner didn't trust Yates with keys to the house. After that, he spent a time sleeping in acquaintances' homes.

Yates' criminal history suggests a meaningful term of imprisonment is appropriate. In 2011, Yates punched, scratched, kicked, and slapped his then-girlfriend, both in their car and in their home. PSR at ¶ 40. Yates was charged with battery, to which he pled "nolo contendere" and was sentenced to 12 months' probation and $925 in fines, as well as a 26-week violence intervention program. *Id.*

Yates has been charged with at least three other offenses. In 2008, Yates was charged with "Repeat Violence." Later that year, he was also charged with drug possession. And in 2021 he was charged with driving without insurance. All three charges were dismissed. *Id.* at ¶¶ 56-58. Beyond these charges, Yates has had numerous traffic violations ranging from speeding to failure to display a driver's license, in 2005 (twice), 2007, 2008, 2009, 2010, 2012, 2015 (twice), 2016, 2017, 2021 (twice), and 2023. *Id.* at ¶¶ 42-55. January 6 was not an aberration in an otherwise law-abiding life.

### C.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Yates's criminal conduct on January 6 was the epitome of disrespect for the law. As Judge Jackson observed, "We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power." *United States v. Cronin*, 22-CR-233 (ABJ), Tr. 06/09/23 at 20.

**D.      The Need for the Sentence to Afford Adequate Deterrence**

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[2] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a term of incarceration. Yates has shown a disrespect for the law, in incidents both small (over a dozen traffic offenses over more than 15 years) and large (assaulting his then-girlfriend and attacking officers at the Capitol). His actions show that his attack on January 6 was not an isolated incident. A meaningful sentence is necessary to deter Yates from future violence and induce compliance with the law going forward.

**E.      The Importance of the Guidelines**

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007)

---

[2] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

13

(quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

## F.   Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *conduct*" (emphasis added). So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*,

545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[3]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.[4] While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Hess*, 23-CR-86 (RCL), the defendant entered the Capitol through the East Rotunda Doors, near where Yates pushed against the police. As police officers fired pepper balls and attempted to physically remove the rioters, Hess held his ground. Government Sentencing Memorandum at 3-6, *United States v. Hess*, 23-CR-86 (D.D.C. Feb. 12, 2024), ECF No. 37. The officers eventually removed Hess and the other rioters by pushing them back out the East Rotunda

---

[3] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Doors. *Id.* But as an officer tried to close the doors, Hess moved to stop him. *Id.* The officer told Hess to "stop" multiple times, but Hess pushed the officer with his right arm while holding the door open with his left arm. *Id.* Eventually forced out of the building, Hess bragged about what happened on social media. *Id.* at 7. Hess's and Yates's confrontations with police were just feet and minutes from each other, and both men pushed against police to help their fellow rioters in. Both did so despite obvious evidence that they were not supposed to be in the Capitol, and not supposed to fight the police. Yet Hess spent less than ten minutes in the Capitol; Yates spent more than an hour. Hess was sentenced to nine months' incarceration, 36 months' supervised release, and $2,000 in restitution. Yates's attack on officers was somewhat less dramatic than Hess's, but because of his extensive time in and travel through the building, Yates deserves a somewhat longer sentence.

In *United States v. Johnson*, 21-CR-407 (DLF), Daniel Johnson, along with his father Daryl, entered the Capitol through a window near the Senate Wing Door and remained in the building for about 26 minutes. Government Sentencing Memorandum at 6, *United States v. Johnson*, 21-CR-407 (D.D.C. May 25, 2022), ECF No. 58. At the East Rotunda Doors—again, near to where Yates confronted police, although a few minutes earlier—Johnson encountered a line of police officers trying to stop rioters from entering through the East Front. *Id.* at 8-19. Johnson and a group of rioters rushed to push past the officers, open the doors, and let other rioters in. *Id.* After leaving the Capitol grounds, Daniel Johnson bragged about his actions on social media. *Id.* at 20-21. Both Yates and Johnson decided to help their fellow rioters advance into the Capitol. Yates, however, spent considerably more time in the building, and in considerably more places. This made it harder for officers to get control over the Capitol. Daniel Johnson was

sentenced to four months' incarceration, 12 months' supervised release, and $2,000 in restitution. Yates' more serious actions are deserving of a higher sentence. Moreover, Johnson's Total Offense Level was lower than Yates's, resulting in a Guidelines range of only zero to six months incarceration.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Yates must pay $2,000 in restitution, which reflects in part the

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

role Yates played in the riot on January 6.[6] Plea Agreement at 8. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* Yates's restitution payment must be made to the Architect of the Capitol. *See* PSR at ¶ 11.

## VIII.  FINE

The defendant's convictions for violating 18 U.S.C. § 231(a)(3) subject him to a statutory maximum fine of $250,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, while the PSR states that "it appears [Yates] has the ability to pay a fine in addition to the agreed upon restitution obligation," the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine. PSR ¶¶ 83-89. As Yates's father described, the defendant is "out of work and struggling financially," and is currently residing at his father's house. PSR ¶ 66.

## IX.  CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a

---

[6] Unlike under the Sentencing Guidelines for which the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

sentence of 11 months' incarceration, 36 months' supervised release, 100 hours' community service, $2,000 in restitution, and $100 in special assessments.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:     /s/ Brendan Ballou
        Brendan Ballou
        Special Counsel
        DC Bar No. 241592
        United States Attorney's Office
        601 D Street NW
        Washington, DC 20001
        (202) 431-8493
        brendan.ballou-kelley@usdoj.gov

19